| | |
|---|---|
| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT<br>FOURTH JUDICIAL DISTRICT<br>Case Type: Employment |

| | |
|---|---|
| Erica Frizzell-Nelson,<br><br>        Plaintiff,<br>v.<br><br>METROPOLITAN COUNCIL through its<br>operating division, METRO TRANSIT,<br><br>        Defendant. | Court File No. 27-CV-14-5343<br>Judge Janet N. Poston<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Erica Frizzell-Nelson, on personal knowledge as to herself, and otherwise on information and belief, hereby alleges as follows:

### THE PARTIES

1. Plaintiff Erica Frizzell-Nelson ("Nelson") is an African-American female who was employed by Defendant Metropolitan Council as a bus operator for Metro Transit.

2. Defendant Metropolitan Council ("Met Council") is a regional governmental agency created by the Minnesota State Legislature to provide essential services to the seven-county Minneapolis-St. Paul metropolitan area. Met Council provides public transportation services through its operating division, Metro Transit.

### JURISDICTION AND VENUE

3. Jurisdiction is proper in this District because Met Council was formed under the laws of this State and regularly transacts business within this State, or Defendant has committed torts within this State, solicits business within this State, or should reasonably expect its acts to have consequences within this State.

4. Venue is proper in this District because, *inter alia*, Met Council has operations in Hennepin County, it does business in Hennepin County, and a substantial part of the acts and transactions complained of in this Complaint took place, and/or had consequences, in Hennepin County.

## FACTUAL BACKGROUND

5. Nelson was hired by Met Council as a full-time bus operator on or about September 8, 2008.

6. Nelson has an exemplary driving record and has earned excellent reviews from her supervisors. She has also developed a loyal following among riders and patrons along her North Minneapolis route.

7. During her employment, Nelson entered into a romantic relationship with Anthony Hines, a Metro Transit Police Officer, during which time Nelson was subjected to physical, mental, and emotional abuse by Officer Hines. As a result of the abuse, Nelson underwent therapy, and was prescribed medications that prevented her from driving a bus.

8. On or about February 27, 2012, Nelson reported the abuse to John Cook, her supervisor, and to Connie DeVolder, a Met Council Occupational Health Nurse. Nelson was put on disability and assigned to "restricted duty" status. Cook was assigned as Nelson's "Disability Manager." Cook failed to develop a "return to work" plan, determine if a job modification would be appropriate, or take other actions required by Metro Transit's written policies.

9. Because Nelson's physician did not authorize any work while she adjusted to her medication, she applied for, and received, time off under the Family Medical Leave Act from approximately February 27, 2012 to early May, 2012.

10. On or about May 11, 2012, after Nelson's physician authorized her to return to "light duty" work, she was given the task of cleaning buses for Metro Transit's Maintenance Department. Nelson's "Restricted Duty Supervisor" was Tony Kolnik. Cook remained as Nelson's Disability Manager.

11. Nelson's medications had numerous side effects that caused her to miss work. In addition, heat and fumes from the buses (which were left idling in an enclosed space while they were being cleaned) caused Nelson to become ill and take breaks, or leave early on some occasions. Kolnik excused these absences.

12. In early July, Nelson reported to Cook that she had ended her relationship with Officer Hines, but that she was still being victimized by him. Cook referred Nelson to Jan Dietrich of the Met Council's Equal Opportunity Employment Office. Nelson met confidentially with Dietrich on July 11 and July 12, and reported that Officer Hines had strangled her, threatened her, and committed other acts against her. Nelson told Dietrich that she intended to seek a restraining order against Officer Hines. Dietrich discouraged Nelson from doing so, however, and questioned the veracity and/or significance of Nelson's accusations against Officer Hines.

13. Nelson filed for a restraining order against Officer Hines on or about July 12, 2012. She also (at Dietrich's urging) scheduled a meeting with Acting Transit Police Chief A.J. Olson for the next day. Olson was unable to attend the meeting, however, so on July 13, 2012, Nelson met instead with Captain Mike Levine, who took Nelson's

3

statement regarding Officer Hines. On information and belief, nothing was done to remedy the harassment.

14. In late July, Nelson ran out of medication, and could not afford to purchase any more until her next payday. Nelson suffered from withdrawal symptoms, and informed Kolnick and Bobby Andress (who was filling in for Cook while he was on vacation). They both told her they would treat her illness as a "sick and carry," which meant she did not have to call in again until she was ready to return to work. At no time did either of them warn her about excessive absences, or otherwise indicate that her restricted duty position was in jeopardy in any way.

15. On August 2, 2012, Nelson informed Kolnik and Andress that she would miss work for a few days to attend court proceedings on her petition for a restraining order against Officer Hines. Kolnik and Andress both told Nelson that they would excuse the absences, and wished her luck. Again, Kolnik and Andress did not warn Nelson about excessive absences, or otherwise indicate that her restricted duty position was in jeopardy in any way.

16. The evidentiary hearing on Nelson's petition against Officer Hines lasted from August 2 to August 8, 2012. Dietrich was subpoenaed to testify against Nelson, and produced a memorandum she wrote regarding her confidential meeting with Nelson, which was admitted into evidence. On August 8, 2012, the Court denied Nelson's request for a restraining order.

17. Unbeknownst to Nelson, on August 3, 2012, Kolnik and DeVolder decided to terminate Nelson's restricted duty position. Kolnik later stated that Nelson was terminated for unexcused absences, tardiness and failure to attend to job duties.

Nelson received no verbal or written warning, however, and was not even informed her restricted duty position had been terminated until August 6, 2012, when she called in to schedule a meeting with Cook. Cook did not explain why Nelson's restricted duty position had been terminated, or provide her with any written notice, as required by Metro Transit's procedures.

18.     On August 17, 2012, Cook presented Nelson with a "Record of Warning" of excessive absences. The Record of Warning, which was backdated to July 20, 2012, was the first time Nelson was told of any problems with her attendance.

19.     A "medical disqualification" meeting was held on August 17, 2012, attended by Nelson, Cook, DeVolder, and others. During the meeting, Nelson was told she needed to return to work as a bus operator by October 29, 2012, or be terminated. Nelson presented a return to work plan developed by her physician that had her resume bus driving duties by December 7, 2012, to give her sufficient time to taper off her medication. She requested restricted duty status until that time. Nelson was informed that the December 7, 2012 date was unacceptable, and that she would be terminated.

20.     Nelson applied for numerous alternative positions with the Metropolitan Council, including as a scheduler, as a Transit Store cashier, and as a document scanner. She was denied every position she applied for, except for a position as a bus cleaner. The only cleaner position offered, however, was on the night shift, which Nelson could not accept because of her child care obligations.

21.     Nelson filed a charge with the Minnesota Department of Human Rights on or about October 16, 2012. Her charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC") on or about July 15, 2013. On February 24, 2014,

the Minnesota Department of Human Rights issued a finding of No Probable Cause and ordered that the Charge be dismissed. On or about July 3, 2014, Nelson, through her attorney, received a Notice of Right to Sue from the EEOC dated June 30, 2014. The Notice of Right to Sue is attached hereto as Exhibit A.

## COUNT I
## SEX DISCRIMINATION
## Minn. Stat. § 363A.08 subd.2

22. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

23. Met Council and Metro Transit subjected Nelson to disparate treatment and adverse employment actions based on her sex, in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08 subd.2.

24. Met Council and Metro Transit also failed to take remedial action with respect to the harassment Nelson reported that she suffered from Officer Hines, in violation of the MHRA, Minn. Stat. § 363A.08 subd.2.

25. Plaintiff has suffered, and is reasonably certain to continue to suffer, mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights and remedies provided by the MHRA, including without limitation actual damages, compensatory damages, treble damages, civil penalties, and attorney's fees and costs, in excess of $50,000.00, to be determined at trial.

## COUNT II
## RACE DISCRIMINATION
## Minn. Stat. § 363A.08 subd.2

26. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

27. Met Council and Metro Transit subjected Nelson to disparate treatment and adverse employment actions based on her race, in violation of the MHRA, Minn. Stat. § 363A.08 subd.2.

28. Plaintiff has suffered, and is reasonably certain to continue to suffer, mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights and remedies provided by the MHRA, including without limitation actual damages, compensatory damages, treble damages, civil penalties, and attorney's fees and costs, in excess of $50,000.00, to be determined at trial.

## COUNT III
## DISCRIMINATION BASED ON DISABILITY
### Minn. Stat. § 363A.08 subd.2

29. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

30. Nelson suffered from depression and anxiety as a result of the abuse she received from Officer Hines. As a result, she was prescribed medications that prevented her from operating a bus.

31. Met Council and Metro Transit subjected Nelson to disparate treatment and adverse employment actions based on her disability, in violation of the MHRA, Minn. Stat. § 363A.08 subd.2.

32. Plaintiff has suffered, and is reasonably certain to continue to suffer, mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights and remedies provided by the MHRA, including without limitation actual damages, compensatory damages, treble damages, civil penalties, and attorney's fees and costs, in excess of $50,000.00, to be determined at trial.

## COUNT IV
## FAILURE TO ACCOMMODATE
## Minn. Stat. § 363A.08 subd.2

33. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

34. Nelson suffered from depression and anxiety, which required her to take prescription medications that prevented her from driving a bus.

35. Nelson requested an accommodation, including transfer to restricted duty status and alternative employment, until she was able to drive a bus again.

36. Met Council knew of Nelson's disability, but did not engage in good faith to attempt to accommodate her disability, in violation of the MHRA, Minn. Stat. § 363A.08 subd.2.

37. Nelson's disability could have been reasonably accommodated, but for Met Council's actions. She has suffered, and is reasonably certain to continue to suffer, mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights

and remedies provided by the MHRA, including without limitation actual damages, compensatory damages, treble damages, civil penalties, and attorney's fees and costs, in excess of $50,000.00, to be determined at trial.

## COUNT V
## UNLAWFUL REPRISAL
## Minn. Stat. § 363A.15

38. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

39. Met Council and Metro Transit committed acts of reprisal against Nelson for her efforts to oppose unfair employment practices prohibited by the MHRA, in violation of Minn. Stat. § 363A.15.

40. Plaintiff has suffered, and is reasonably certain to continue to suffer, mental anguish, emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits, as a direct and proximate result of Defendant's violation of her civil rights as alleged herein. Plaintiff is entitled to the rights and remedies provided by the MHRA, including without limitation actual damages, compensatory damages, treble damages, civil penalties, and attorney's fees and costs, in excess of $50,000.00, to be determined at trial.

## COUNT VI
## INTENTIONAL DISCRIMINATION
## IN VIOLATION OF TITLE VII
## 42 U.S.C. §§ 2000e, et. seq.

41. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

42. By its conduct, Defendant violated Title VII of the Civil Rights Act of 1964, as amended, in that it purposefully discriminated against Plaintiff on the basis of

race and/or gender.

43. As a direct, proximate and foreseeable result of Metro Transit's discriminatory actions, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

44. Plaintiff is entitled to damages and injunctive relief, along with costs, expenses, and attorneys' fees, in an amount presently unknown but to be determined at trial.

## COUNT VII
## INTENTIONAL DISCRIMINATION
## IN VIOLATION OF SECTIONS 1981 AND 1983
## 42 U.S.C. §§ 1981, 1983

45. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

46. Pursuant to 42 U.S.C. § 1981, it is illegal for a public or private employer to infringe on a person's right to make and enforce contracts or to full and equal benefit of all laws for the security of persons and property. In the case of a state actor, a violation of § 1981 is actionable pursuant to 42 U.S.C. § 1983 if the person acted under color of state law in discriminating against the plaintiff.

47. As a union member, Plaintiff is a beneficiary of the contract between his union and Met Council. Plaintiff enjoys the same rights as non-African American, male union members in the making, performance, modification, and termination of this contract, and in the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

48. By its conduct, Defendant violated 42 U.S.C. §§ 1981 and 1983.

49. As a direct, proximate and foreseeable result of Defendant's conduct,

Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

50. Plaintiff is entitled to damages and injunctive relief, along with costs, expenses, and attorneys' fees, in an amount presently unknown but to be determined at trial.

## COUNT VIII
## VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, et seq.

51  Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

52. At all material times hereto, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4), and Defendant was a "covered entity" within the meaning of 42 U.S.C. 12111(2).

53. 42 U.S.C. § 12112 provides that an employer shall make reasonable accommodations for the known disabilities of its employees and shall not discriminate against a qualified individual on the basis of disability in regard to the employee's compensation, discharge, and other terms, conditions, and privileges of employment.

54. By its conduct, Defendant violated 42 U.S.C. § 12112.

55. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

56. Plaintiff is entitled to injunctive and declarative relief to rectify the effects of Defendant's conduct.

## COUNT IX
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12203

57. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

58. 42 U.S.C. § 12203(b) provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this Chapter."

59. By its conduct, Defendant violated 42 U.S.C. § 12203(b).

60. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

61. Plaintiff is entitled to injunctive and declarative relief to rectify the effects of Defendant's conduct.

## COUNT X
## VIOLATION OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794

62. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63. The Rehabilitation Act of 1973, 29 U.S.C. § 794, otherwise known as "Section 504," prohibits discrimination on the basis of disability in programs receiving Federal financial assistance. Among other things, programs receiving Federal assistance must provide reasonable accommodation for employees with disabilities.

64. By its conduct, Defendant violated 42 U.S.C. § 794.

65. As a direct, proximate and foreseeable result of Met Council's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

66. Plaintiff is entitled to damages and injunctive relief, along with costs, expenses, and attorneys' fees, in an amount presently unknown but to be determined at trial.

## COUNT XI
## INTERFERENCE WITH
## FAMILY AND MEDICAL LEAVE ACT RIGHTS
## 29 U.S.C. §§ 2611 et seq.

67. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68. Under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 et seq., an employer is required to restore an employee who is on FMLA qualifying leave to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

69. As an employee with a qualifying disability, Plaintiff was entitled to restoration of benefits under the FMLA.

70. Defendant's conduct violated 29 U.S.C. §§ 2614(a)(1) and 2615(a)(1).

71. Defendant's conduct was intentional and performed by Defendant with malice and/or reckless disregard of Plaintiff's statutory benefits rights under the FMLA.

72. As a direct, proximate and foreseeable result of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

73. Plaintiff is entitled to damages and injunctive relief, along with costs, expenses, and attorneys' fees, in an amount presently unknown but to be determined at trial.

## COUNT XII
## RETALIATION IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. §§ 2611 et seq.

74. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

75. The FMLA, 29 U.S.C. §§ 2611 et seq. prohibits an employer from retaliating against an employee for requesting FMLA leave, taking FMLA leave, or otherwise enjoying his rights and benefits under FMLA.

76. Defendant's conduct violated 29 U.S.C. §§ 2614(a)(1) and 2615(a)(1).

77. Defendant's conduct was intentional and performed by Defendant with malice and/or reckless disregard of Plaintiff's statutory benefits rights under FMLA.

78. As a direct, proximate and foreseeable result of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other injury.

79. Plaintiff is entitled to damages and injunctive relief, along with costs, expenses, and attorneys' fees, in an amount presently unknown but to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that following relief:

1. Actual damages,

2. Compensatory damages,

3. Treble damages,

14

4. Civil penalties,

5. Attorney's fees and costs, and

6. All other relief that the Court deems appropriate.

**Plaintiff respectfully requests a jury on all claims so triable.**

Dated: July 15, 2014						WILLIAMS LAW FIRM

								*/s/ Kent Williams*
								_____
								Kent M. Williams (Atty No. #222884)
								WILLIAMS LAW FIRM
								1632 Homestead Trail
								Long Lake, MN 55356
								612-940-4452
								williamslawmn@aol.com

								ATTORNEY FOR PLAINTIFF

## ACKNOWLEDGMENT

Plaintiff, by her attorney, hereby acknowledges that sanctions may be imposed under Minn. Stat. § 549.211 subd.1.

Dated: July 15, 2014						WILLIAMS LAW FIRM

								*/s/ Kent Williams*
								_____
								Kent M. Williams (Atty No. #222884)
								WILLIAMS LAW FIRM
								1632 Homestead Trail
								Long Lake, MN 55356
								612-940-4452
								williamslawmn@aol.com

								ATTORNEY FOR PLAINTIFF

# Exhibit A

EEOC Form 161-B (11/09) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Erica Frizzell-Nelson<br>Po Box 17370<br>Lot 886<br>Saint Paul, MN 55117 | From: | Milwaukee Area Office<br>310 West Wisconsin Ave<br>Suite 500<br>Milwaukee, WI 53203 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 26E-2013-00218 | Ora M. Holland,<br>State & Local Coordinator | (312) 869-8078 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

John P. Rowe,
District Director

Enclosures(s)

*(Date Mailed)*

METROPOLITAN COUNCIL
Attn: Human Resource Manager
390 North Robert Street
Saint Paul, MN 55101

Williams Law Firm
Attn: Kent Williams
1632 Homestead Trail
Long Lake, MN 55356

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF YOUR CHARGE WAS INVESTIGATED BY ANY OF THE FOLLOWING AGENCIES, YOU MUST DIRECT ALL REQUESTS TO REVIEW AND/OR COPY DOCUMENTS FROM YOUR FILE TO THE AGENCY BELOW THAT INVESTIGATED YOUR CHARGE:

> THE WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT- EQUAL RIGHTS DIVISION; THE MADISON DEPARTMENT OF CIVIL RIGHTS - EQUAL OPPORTUNITIES DIVISION; THE IOWA CIVIL RIGHTS COMMISSION; THE DAVENPORT CIVIL RIGHTS COMMISSION; THE MASON CITY HUMAN RIGHTS COMMISSION; THE MINNESOTA DEPARTMENT OF HUMAN RIGHTS; THE MINNEAPOLIS DEPARTMENT OF CIVIL RIGHTS OR THE CITY OF ST PAUL -DEPARTMENT OF HUMAN RIGHTS & EQUAL ECONOMIC OPPORTUNITY.

A lawsuit against a private employer is generally filed in the U.S. District Court. A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court. A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

## ATTORNEY REPRESENTATION

If you cannot afford an attorney or have been unable to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

## DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.